### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

| | |
|---|---|
| GUSTIN C. BROWNLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-03122-JAR-GEB |
| | ) |
| BRETT CORBY, et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS CORBY AND MCCOLLOUGH
### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COME NOW Defendants Brett Corby and Alex McCollough, and pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, move for an Order from the Court dismissing Plaintiff's Second Amended Complaint [Doc. 25] as Plaintiff has failed to state a claim upon which relief can be granted and failed to exhaust his administrative remedies

In support of said Motion, Defendants state as follows:

### I.      NATURE OF CASE

Plaintiff has filed suit alleging that Defendants Corby and Dowling were deliberately indifferent to his serious medical needs following an automobile accident on May 23, 2018. Plaintiff has alleged that Defendant McCollough used excessive force after the accident on May 23, 2018.

Plaintiff initially filed suit on April 28, 2020. *See* Docket. The initial Complaint [Doc. 1], was screened by the Court and a Show Cause Order was issued. *See* Notice and Order to Show Cause [Doc. 4]. Based on Plaintiff's failure to respond to the Show Cause Order, the case was dismissed. However, because Plaintiff had responded to the Show Cause Order and provided the pleading to correctional facility employees prior to the deadline, the dismissal was overturned.

Based on the response to the Show Cause Order, the Court entered an Order that Plaintiff was to file an Amended Complaint. *See* Memorandum and Order [Doc. 18]. On April 14, 2022, Plaintiff filed his First Amended Complaint [Doc. 21].

The First Amended Complaint was again screened by the Court and an Order was entered dismissing some of Plaintiff's claims and it was ordered that a Second Amended Complaint was to be filed. *See* Memorandum and Order [Doc. 22].

On August 15, 2022, Plaintiff filed the Second Amended Complaint [Doc. 25]. Following the filing of the Second Amended Complaint, the Court ordered service on the remaining defendants for the two counts in the controlling complaint:

(1) **Count I**: against Defendants Dowling and Corby for violations of the Eighth and Fourteenth Amendment for intentionally denying and delaying proper medical care, treatment and assistance;

(2) **Count II**: against Defendant McCollough for violations of Plaintiff's rights prohibiting cruel and unusual punishment under the Eighth Amendment by using excessive force and intentionally denied and delayed proper medical care

*See* Second Amended Complaint, Doc. 25, p. 7. To date, Defendant Dowling has not been served. *See* Docket.

## II.   STATEMENT OF FACTS

This statement of facts is based on the allegations in the Second Amended Complaint and documents attached to the pleadings filed by Plaintiff. Because these "facts" are limited to those contained in the Second Amended Complaint and attached documents for purposes of a Motion to Dismiss, and are taken in the light most favorable to Plaintiff, Defendants reserve the right to dispute these allegations if this case survives the motion to dismiss:

1. On May 23, 2018, Plaintiff was incarcerated at El Dorado Correctional Facility ("EDCF"). Doc. 25, p. 4.

2.      While being transported from EDCF to an outside medical appointment by Defendants Dowling and Corby, the transport vehicle was involved in an automobile accident. Doc. 25, p. 4.

3.      Plaintiff alleges that he was injured in the automobile by accident in that he received "a bruised spinal cord and damage nerve." Doc. 25, p. 5.

4.      Plaintiff alleges that Defendant Corby intentionally denied and delayed proper medical care, treatment and assistance. Doc 25, p. 10.

5.      Plaintiff alleges that Defendant Corby told him that he would not be seen by emergency personnel at the scene but that he would be taken back to EDCF. Doc. 25, p. 10.

6.      Plaintiff was transported back to EDCF to be seen by medical personnel at the correctional facility. Doc. 25, p. 5.

7.      Plaintiff alleges that he was "forcefully and maliciously grabbed and druged [sic] out of [the] wrecked van and thrown into another" by Defendant McCollough. Doc. 25, p. 5.

8.      Upon his return to EDCF, Plaintiff alleges that Defendant McCollough "forcefully and maliciously grabbed and drug Plaintiff to [the] floor of [the] van kneed and punching plaintiff". Doc. 25, p. 6.

9.      Plaintiff alleges that had Defendant Corby not intentionally denied and delayed proper medical care he would have received proper medical diagnosis and would not have been mishandled and attacked by Defendant McCollough. Doc. 25, p. 10.

10.     Plaintiff admits he was seen by Dr. Harrod when he returned to EDCF and that Dr. Harrod did an assessment for his injuries. Doc. 25, p. 12.

11.     Prior to the filing of the Second Amended Complaint, Plaintiff had not alleged that Defendant McCollough punched him. *See* Complaint and Exhibits [Docs. 1, 1-1]; First Amended

3

Complaint and Exhibits [Docs. 21, 21-1]; Exhibits to Second Amended Complaint [Doc. 25-1].

12. In his Inmate Request to Staff Member dated 5/28/2018, Plaintiff indicated that after asking if he was okay, Defendant Corby made a phone call and then was told he would not be seen on site and that he was going to be taken back to the infirmary. Doc. 25-1, p. 8.

13. In his Inmate Request to Staff Member dated 5/28/2018, Plaintiff indicated that Defendant Corby "was really nice to me during the incident. I don't believe he should be punished in any kinda [sic] way." Doc. 25-1, p. 9.

14. Plaintiff attached to the Second Amended Complaint and other pleadings documents in support of his claim that he exhausted his administrative remedies. Doc. 25-1.

15. In his "Special Procedures" correspondence, Plaintiff made no reference to Defendant Corby other than he made a phone call after the accident and after told Plaintiff that he was to return to the facility. Doc. 25-1, p. 14 – 20.

16. Plaintiff was notified that his Special Kinds of Problems Grievance was improper and that it should be handled by the inmate grievance procedure. Doc. 21-1, p. 15 – 16.

### III. STATEMENT OF QUESTIONS PRESENTED

A. Has Plaintiff exhausted his administrative remedies?

B. Does Count I state a claim for deliberate indifference to a serious medical need against Defendant Corby?

C. Does Count II state a claim for deliberate indifference to a serious medical need against Defendant McCollough?

D. Does Count II state a claim for excessive use of force against Defendant McCollough?

E. Should Plaintiff's request to amend his complaint be denied?

### IV. STANDARD OF REVIEW

**A. Standard for Motion to Dismiss**

The United States Supreme Court has held that in order to state a claim for relief, a plaintiff must allege sufficient facts to state a "plausible" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). Under the *Bell Atlantic* standard, a plaintiff must state a "plausible" claim by providing factual allegations enough to raise a right to relief above a "speculative" level and provide information of his entitlement to relief. *Id*. at 1964-65. Labels, conclusions, and "formulaic recitation of the elements" will not suffice. *Id*.

### B.  Standard for Construing *Pro Se* Pleadings

While the Court must construe *pro se* pleadings liberally, it "need only accept as true plaintiff's well-pleaded contentions, not his conclusory allegations." *Loggins v. Cline*, 568 F.Supp. 2d 1265, 1268 (D. Kan. 2008). It is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant," and the Court should not "construct arguments or theories for the plaintiff" or "supply additional factual allegations to round out a plaintiff's complaint." *Bey v. Douglas County Correctional Facility*, 08-3036-JAR, 2008 WL 2783140, at *2 (D. Kan. July 15, 2008); *Shelby v. Mercy Regional Health Center*, 07-4147-EFM, 2009 WL 1067309, at *2 (D. Kan. April 21, 2009),. Moreover, *pro se* litigants are subject to and must follow procedural rules governing all litigants. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Even a *pro se* plaintiff bears the burden of alleging "enough facts to state a claim to relief that is *plausible* on its face." *Bafford v. Pokorski*, 07-3230-SAC, 2008 WL 2783132, at *1 (D. Kan. July 17, 2008).

### V.  ARGUMENT AND AUTHORITIES

#### A. Plaintiff's Second Amended Complaint [Doc. 25] should be dismissed as Plaintiff has failed to exhaust his administrative remedies

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S.

5

516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). Failure to exhaust can support a 12(b)(6) dismissal when clear from the face of the complaint. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15 101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, Plaintiff's § 1983 claim falls under this regulation because his complaint involves the actions of employees at EDCF. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021); K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

Here, Plaintiff did not complete the KDOC grievance process prior to filing the instant action. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

As demonstrated by the documents attached by Plaintiff to his pleadings to date, Plaintiff failed to properly or timely appeal to the secretary of corrections as required by the four-step grievance process. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c); *see also* Doc. 1-1; Doc. 21-1; Doc. 25-1; and Exhibit A, Declaration of Darcie Holthaus.[1] Plaintiff attached a grievance form dated May 25, 2018 (Doc. 25-1, p. 10), which would make the latest deadline to appeal to the warden June 4, 2018.

Instead, after the appeal deadline, Plaintiff improperly submitted a Special Kinds of Problems Grievance to the Secretary of Corrections. *See* Doc. 25-1, pp. 14-17. On August 14, 2018, the Secretary of Corrections sent the "Specials Kind of Problems Grievance" back to

---

[1] The Declaration of Darcie Holthaus is provided only to assist the Court in organizing the various documents that have previously been provided by Plaintiff in his numerous filings. The at issue Special Kinds of Problems Grievance which is attached to the Declaration, has previously been provided to the Court by Plaintiff at Doc. 21-1, p. 15, Doc. 25-1, pp. 16-17; and Doc. 25-1, pp. 14-15.

Plaintiff noting that it was improper and Plaintiff was to follow the proper grievance procedures. *See* Doc. 21-1, p. 15. However, Plaintiff did not ever follow the proper procedure and appeal to the secretary of corrections as required by the KDOC grievance process.

This Court has previously held that a submission of a Special Kinds of Problems Grievance does not satisfy the exhaustion requirements of PLRA. *See Chambers v. Roberts*, No. 13–3195–SAC, 2013 WL 6670521, at *6 (D. Kan. Dec. 18, 2013) ("The filing of a 'special problems' grievance to the Secretary, rather than following the steps in the KDOC grievance process, does not amount to full exhaustion where, as here, the Secretary determined that the grievance was not appropriate for special problems treatment."); *Smith v. Roberts*, 393 P.3d 1058 (table opinion), 2017 WL 1367053, at *4 (Kan. Ct. App. Apr. 14, 2017) ("[R]ather than address the Unit Team's lack of timely response with the warden, per K.A.R. 44-15-102(a), Smith bypassed the warden and requested a resolution through the Special Kinds of Problems regulation with the Secretary. In so doing, Smith failed to follow the established procedures in a way that could reasonably be construed as exhausting his administrative remedies."); *see also Brown v. Schnurr*, No. 21-3105-JAR-GEB, 2022 WL 3646248, at *3, *6 (D. Kan. Aug. 24, 2022).

The appeals to the warden and to the secretary of corrections are required steps for exhaustion under the PLRA, *see* K.A.R. § 44-15-101(d); 44-15-102(a)-(c), and Plaintiff did not complete them before pursuing his § 1983 claim. *See* 42 U.S.C. § 1997e(a); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Under the [PLRA], a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA[.]").

Therefore, this Court should dismiss Plaintiff's claims for failure to exhaust.

### B. In the alternative, Count I as to Defendant Corby should be dismissed as Plaintiff has failed to state a claim upon which relief can be granted

"In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that each defendant acted under color of state law and that he or she violated a right secured by the Constitution." *Richey v. Ferguson*, 05-5162, 2007 WL 710129, at *18 (W.D. Ark. Mar. 6, 2007). "Mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983." *Id*. A mere difference of opinion regarding medical care does not support a Section 1983 claim. *Sandifer v. Green*, 126 Fed.Appx. 908, 911 (10th Cir. 2005). Simply stated, a prisoner's disagreement or dissatisfaction with treatment offered is not sufficient to establish deliberate indifference. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

In order for an inmate to allege a claim based on inadequate medical care, the plaintiff must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" test has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious;" and (2) "a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

To satisfy the objective component, "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must **both** be aware of facts from which the

9

inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (citation and quotation omitted) (emphasis added). The Defendant must "consciously disregard[] a substantial risk of serious harm." *Thomas v. Bruce*, 428 F.Supp. 2d 1161, 1170 (D. Kan. 2006). In other words, Plaintiff must allege that a prison official **knows of** and **disregards** an excessive risk to inmate health or safety by failing to take reasonable measures to abate it. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment **does not** state a constitutional violation." *Sandifer*, 126 Fed.Appx. at 911 (citation omitted) (emphasis added). Simply put, "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment." *Smith v. Harvey County Jail*, 889 F.Supp. 426, 430 (D. Kan. 1995).

A claim for deliberate indifference based on delay must allege substantial physical harm resulting from the delay in treatment. *Bafford v. McNickle*, 08-3095-SAC, 2009 WL 2899802, at *2 (D. Kan. Sept. 4, 2009). A delay in providing medical care does not violate the eighth amendment unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993).

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years.

*Freeman v. Strack*, No. 99 CIV. 9878 (AJP), 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000).

Plaintiff has only alleged injuries as a result of the automobile accident.[2]  Plaintiff has not alleged any additional injuries caused by the alleged "delay" of medical care by Defendant Corby. Although Plaintiff has alleged he was "denied" medical care, in the Second Amended Complaint, he admits he was in fact provided care by Dr. Harrod.  As noted above, a Section 1983 claim cannot survive when there is merely a disagreement on what type of medical care should be received --- in this case, care at the scene by EMTs versus medical staff at EDCF.  *See Smith v. Harvey County Jail*, 889 F.Supp. at 430.  Plaintiff's own allegations demonstrate that he was receiving care from EDCF medical staff, just not the care he wanted to receive.  Further, his injury was not so urgent to require treatment at an emergency room, as demonstrated by the fact that Dr. Harrod did not have him transferred out, and instead provided treatment in the infirmary at EDCF.

Furthermore, in the documents attached to the Second Amended Complaint, Plaintiff has previously reported that Defendant Corby "was really nice to me during the incident. I don't believe he should be punished in any kinda [sic] way."  Doc. 25-1, p. 9.  Therefore, Plaintiff's claim for deliberate indifference against Defendant Corby fails as a matter of law because the allegations contained in the Second Amended Complaint and exhibits do not satisfy the subjective component.

Further, as previously noted by the Court, Plaintiff has alleged that Defendant Corby made a call and only after making the phone call, it was decided that Plaintiff would be transferred back to the facility.  *See* Memorandum and Order, Doc. 22, pp. 12-13.  As this Court previously noted, it does not appear that the decision on where medical care was to be provided was made by Defendant Corby.  *See* Memorandum and Order, Doc. 22, pp. 12-13.

Therefore, based on the above and foregoing, Plaintiff has failed to state a claim upon

---

[2] The Court has previously dismissed the claims against Defendants as it relates to the accident itself.  *See* Memorandum and Order, Doc. 22, p. 8.

which relief can be granted as to Defendant Corby and Defendant Corby should be dismissed from this action.[3]

### C. In the alternative, Count II as to Defendant McCollough should be dismissed as Plaintiff has failed to state a claim upon which relief can be granted for deliberate indifference to a serious medical need and has failed to exhaust related to new claims of being "punched" by Defendant McCollough

As an initial matter, it is unclear whether Plaintiff is attempting to assert a claim against Defendant McCollough related to denying/delaying medical care. Although Plaintiff indicates that it is part of his claim on p. 7 of the Second Amended Complaint, Doc. 25, he has not asserted any facts related to a denial or delay related to medical care. Regardless, for the same reasons set forth above as it relates to Defendant Corby, any such claim related to the denial/delay of medical care against Defendant McCollough should be dismissed.

As it relates to Plaintiff's claims for excessive use of force, as argued in detail above, Plaintiff has failed to exhaust his administrative remedies. As it relates specifically to his claims against Defendant McCollough, in his original Complaint [Doc. 1] and his First Amended Complaint [Doc. 21], Plaintiff made claims against Defendant McCollough regarding the use of force in removing him from the van. In screening the original Complaint, the Court stated as follows regarding this claim:

> Next, plaintiff's claim against defendant McCullough essentially alleges the use of excessive force in removing him from the transport van. A prison guard's use of force is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Like a claim for inadequate medical care, an excessive force claim is analyzed under two components, first, an objective prong concerning whether the alleged force was objectively so egregious as to violate the Constitution, and second, a subjective prong that requires a showing that the officer acted with a culpable state of mind. *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). The subjective prong requires a showing that the officer acted "'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort

---

[3] Although Defendant Dowling has not yet been served, the same arguments apply to Plaintiff's claims against Defendant Dowling and the Court should *sua sponte* dismiss the claims against Defendant Dowling.

to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

> Here, the brief use of force to remove plaintiff from the van does not suggest that the use of force was objectively unreasonable or that defendant McCullough had malicious intent. Plaintiff had been moved recently from one transport van to another, and there is no suggestion that the use of force resulted in significant harm. Therefore, the claims against defendant McCullough also are subject to dismissal.

*See* Notice and Order to Show Cause, Doc. 4, pp. 6-7.

In screening the First Amended Complaint, the Court stated as follows regarding this claim:

> The plaintiff alleges that the defendant McCullough forcefully and maliciously grabbed and dragged him from the wrecked van knowing he was complaining of injuries and realizing the additional pain that would come from his actions. The plaintiff also alleges that upon arriving at EDCF infirmary he asked for help in exiting the van and the officers laughed at him. The defendant McCullough then used excessive force pulling him to the floor of the van while handcuffed and shackled, removing him, and causing him more pain and injury. The plaintiff alleges the defendant Mitchell and unknown staff member #2 were negligent in not stopping McCullough.
>
> In this count, the plaintiff alleges McCullough's actions to be negligent but also as taken with deliberate indifference to the plaintiff's known injuries and need for assistance and treatment. The plaintiff alleges that McCullough's actions caused him additional pain and injury. McCullough's actions are alleged to have happened prior to any evaluation or assessment by the medical staff. The court will allow the plaintiff another opportunity to amend his complaint to cure the deficiency with alleging McCullough's intent in using force to remove him from the van and to add more details as to the pain and injury resulting from this use of force, if any. The court, however, dismisses the defendant Mitchell and the unknown staff member #2 for the alleged claim of negligence in not stopping McCullough from removing him from the van with excessive force. The allegation of negligence fails to state an actionable claim for a constitutional violation.

*See* Memorandum and Order, Doc. 22, pp. 13-14.

In all the documents that Plaintiff submitted through his attempts to exhaust his administrative remedies, Plaintiff never alleged that Defendant McCollough punched him. *See* Doc. 1-1; Doc. 21-1; Doc. 25-1. Plaintiff only added this new allegation to the Second Amended

13

Complaint after the Court issued its Orders as noted above that the claims were insufficient to state a claim for excessive use of force under the Eighth Amendment.

For the reasons set forth above, as Plaintiff never attempted to exhaust his administrative remedies as it relates to this new claim of Defendant McCollough punching him, and this Court has previously ruled the initial allegations of "excessive use of force" was not sufficient; therefore, Defendant McCollough requests an Order from this Court dismissing Count II.

### D. Plaintiff's Motion to Construe Plaintiff's Claim for Unsafe Conditions should be denied [Doc. 34]

After the screening of the Second Amended Complaint, the Court entered its Order that this matter should proceed under the Second Amended Complaint. *See* Order, Doc. 27. Since the filing of the Second Amended Complaint, the Plaintiff has filed additional copies of his affidavit, Docs. 26 and 30, and a "Motion Requesting that the Court Construes Plaintiff's Claim of Unsafe Conditions that Violated Plaintiff Eighth Amendment Be Raised," Doc. 34. To the extent this pleading is an attempt by Plaintiff to file a Third Amended Complaint, this request should be denied.

As an initial matter, Plaintiff has failed to comply with D.Kan. Rule 15.1(a)(2) in that he has not "attached the proposed pleading or other document' to the Motion.

Further, Plaintiff has already been granted multiple opportunities to file amended complaints. *See* Docket. The currently controlling complaint, the Second Amended Complaint, has been screened and was served on Defendants Corby and McCollough. "A party may amend its pleading *once* as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a) (emphasis added). When a pro se inmate seeks leave to file an amended complaint after screening has already occurred, after already amending the complaint once, the requested amendment can be "untimely

under the circumstances," and "[u]ndue delay is sufficient reason to deny leave to amend." *Neusteter v. Cossobone*, 62 F. App'x 844, at 845 n.1 (discussing screening), 846 (finding undue delay) (10th Cir. 2003).

Here, it appears that Plaintiff is seeking leave to file a Third Amended Complaint after screening has already occurred, after already amending the complaint twice, and after Defendants Corby and McCollough have filed this responsive pleading. Therefore, to the extent Plaintiff is seeking to file a Third Amended Complaint, such a request should be denied.

## VI. CONCLUSION

WHEREFORE, Defendants Brett Corby and Alex McCollough request an Order from this Court dismissing Plaintiff's Second Amended Complaint, and for such other relief as is just and necessary.

Respectfully submitted,

*/s/ Tracy M. Hayes*
Tracy M. Hayes    KS #23119
SANDERS WARREN & RUSSELL LLP
Compass Corporate Centre
11225 College Blvd., Suite 450
Overland Park, KS  66210
Phone:  913.234.6100
Fax:    913.234.6199
t.hayes@swrllp.com
**ATTORNEYS FOR BRETT CORBY AND ALEX McCOLLOUGH**

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 6th day of January, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record. I hereby further certify a copy of the foregoing was sent via U.S. Mail postage prepaid to the following:

    Gustin C. Brownlee #73693
    EL Dorado Correctional Facility – Central
    PO Box 311
    El Dorado, KS 67042

                                                          */s/ Tracy M. Hayes*
                                                          **Attorney**