IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| GUSTIN C. BROWNLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  20-cv-03122-JAR-GEB |
| | ) |
| BRETT CORBY, et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT DOWLING'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COMES NOW Defendant Eyman Dowling, and pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves for an Order from the Court dismissing Plaintiff's Second Amended Complaint [Doc. 25] as Plaintiff has failed to state a claim upon which relief can be granted and failed to exhaust his administrative remedies.

In support of said Motion, Defendant states as follows:

### I.  NATURE OF CASE

Plaintiff has filed suit alleging that Defendants Corby and Dowling were deliberately indifferent to his serious medical needs following an automobile accident on May 23, 2018. Plaintiff has alleged that Defendant McCollough used excessive force after the accident on May 23, 2018.

 Plaintiff initially filed suit on April 28, 2020.  *See* Docket.  The initial Complaint [Doc. 1], was screened by the Court and a Show Cause Order was issued.  *See* Notice and Order to Show Cause [Doc. 4].  Based on Plaintiff's failure to respond to the Show Cause Order, the case was dismissed.  However, because Plaintiff had responded to the Show Cause Order and provided the pleading to correctional facility employees prior to the deadline, the dismissal was overturned.

Based on the response to the Show Cause Order, the Court entered an Order that Plaintiff was to file an Amended Complaint. *See* Memorandum and Order [Doc. 18]. On April 14, 2022, Plaintiff filed his First Amended Complaint [Doc. 21].

The First Amended Complaint was again screened by the Court and an Order was entered dismissing some of Plaintiff's claims and it was ordered that a Second Amended Complaint was to be filed. *See* Memorandum and Order [Doc. 22].

On August 15, 2022, Plaintiff filed the Second Amended Complaint [Doc. 25]. Following the filing of the Second Amended Complaint, the Court ordered service on the remaining defendants for the two counts in the controlling complaint:

(1) **Count I**: against Defendants Dowling and Corby for violations of the Eighth and Fourteenth Amendment for intentionally denying and delaying proper medical care, treatment and assistance;

(2) **Count II**: against Defendant McCollough for violations of Plaintiff's rights prohibiting cruel and unusual punishment under the Eighth Amendment by using excessive force and intentionally denied and delayed proper medical care

*See* Second Amended Complaint, Doc. 25, p. 7.

II. **STATEMENT OF FACTS**

This statement of facts is based on the allegations in the Second Amended Complaint and documents attached to the pleadings filed by Plaintiff. Because these "facts" are limited to those contained in the Second Amended Complaint and attached documents for purposes of a Motion to Dismiss, and are taken in the light most favorable to Plaintiff, Defendant reserves the right to dispute these allegations if this case survives the motion to dismiss:

1. On May 23, 2018, Plaintiff was incarcerated at El Dorado Correctional Facility ("EDCF"). Doc. 25, p. 4.

2. While being transported from EDCF to an outside medical appointment by

2

Defendants Dowling and Corby, the transport vehicle was involved in an automobile accident. Doc. 25, p. 4.

3. Plaintiff alleges that he was injured in the automobile by accident in that he received "a bruised spinal cord and damage nerve." Doc. 25, p. 5.

4. Plaintiff alleges that Defendant Dowling intentionally denied and delayed proper medical care, treatment and assistance. Doc 25, p. 7.

5. Plaintiff further alleges that Defendant Dowling was operating the transport van while in the commission of the alleged crime of texting and driving. Doc. 25, pp. 7-8.

6. Plaintiff alleges that after the accident that he informed Defendant Dowling that he was in pain and needed to be seen and treated by emergency medical personnel. Doc. 25, p. 9.

7. Plaintiff alleges that Defendant Dowling laughed at the request, mocked Plaintiff, and told Plaintiff he did not believe him. Doc. 25, p. 9.

8. Plaintiff alleges that Defendant Dowling told him he would not be seen by emergency personnel and would instead be transported back to EDCF. Doc. 25, p. 9.

9. Plaintiff was transported back to EDCF to be seen by medical personnel at the correctional facility. Doc. 25, p. 5.

10. Plaintiff alleges that had Defendant Dowling not intentionally denied and delayed proper medical care he would have received proper medical diagnosis and would not have been mishandled and attacked by Defendant McCollough. Doc. 25, pp. 9-10.

11. Plaintiff admits he was seen by Dr. Harrod when he returned to EDCF and that Dr. Harrod did an assessment for his injuries. Doc. 25, p. 12.

12. In his Inmate Request to Staff Member dated 5/28/2018, Plaintiff indicated that after asking if he was okay, Defendant Corby made a phone call and then was told he would not

be seen on site and that he was going to be taken back to the infirmary. Doc. 25-1, p. 8.

13. Plaintiff attached to the Second Amended Complaint and other pleadings documents in support of his claim that he exhausted his administrative remedies. Doc. 25-1.

14. In his "Special Procedures" correspondence, Plaintiff made no reference to Defendant Dowling other than to state that his negligent actions caused the car accident. Doc. 25-1, p. 14 – 17.

15. Plaintiff was notified that his Special Kinds of Problems Grievance was improper and that it should be handled by the inmate grievance procedure. Doc. 21-1, p. 15 – 16.

### III.   STATEMENT OF QUESTIONS PRESENTED

A. Has Plaintiff exhausted his administrative remedies?

B. Does Count I state a claim for deliberate indifference to a serious medical need against Defendant Dowling?

C. Should Plaintiff's request to amend his complaint be denied?

### IV.   STANDARD OF REVIEW

#### A.   Standard for Motion to Dismiss

The United States Supreme Court has held that in order to state a claim for relief, a plaintiff must allege sufficient facts to state a "plausible" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). Under the *Bell Atlantic* standard, a plaintiff must state a "plausible" claim by providing factual allegations enough to raise a right to relief above a "speculative" level and provide information of his entitlement to relief. *Id*. at 1964-65. Labels, conclusions, and "formulaic recitation of the elements" will not suffice. *Id*.

#### B.   Standard for Construing *Pro Se* Pleadings

While the Court must construe *pro se* pleadings liberally, it "need only accept as true plaintiff's well-pleaded contentions, not his conclusory allegations." *Loggins v. Cline*, 568

F.Supp. 2d 1265, 1268 (D. Kan. 2008). It is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant," and the Court should not "construct arguments or theories for the plaintiff" or "supply additional factual allegations to round out a plaintiff's complaint." *Bey v. Douglas County Correctional Facility*, 08-3036-JAR, 2008 WL 2783140, at *2 (D. Kan. July 15, 2008); *Shelby v. Mercy Regional Health Center*, 07-4147-EFM, 2009 WL 1067309, at *2 (D. Kan. April 21, 2009). Moreover, *pro se* litigants are subject to and must follow procedural rules governing all litigants. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Even a *pro se* plaintiff bears the burden of alleging "enough facts to state a claim to relief that is *plausible* on its face." *Bafford v. Pokorski*, 07-3230-SAC, 2008 WL 2783132, at *1 (D. Kan. July 17, 2008).

V. **ARGUMENT AND AUTHORITIES**

A. **Plaintiff's Second Amended Complaint [Doc. 25] should be dismissed as Plaintiff has failed to exhaust his administrative remedies**

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

5

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). Failure to exhaust can support a 12(b)(6) dismissal when clear from the face of the complaint. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, Plaintiff's § 1983 claim falls under this regulation because his complaint involves the actions of employees at EDCF. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021); K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

Here, Plaintiff did not complete the KDOC grievance process prior to filing the instant

action. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

As demonstrated by the documents attached by Plaintiff to his pleadings to date, Plaintiff failed to properly or timely appeal to the secretary of corrections as required by the four-step grievance process. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c); *see also* Doc. 1-1; Doc. 21-1; Doc. 25-1; and Doc. 39-1 (Declaration of Darcie Holthaus).[1]  Plaintiff attached a grievance form dated May 25, 2018 (Doc. 25-1, p. 10), which would make the latest deadline to appeal to the warden June 4, 2018.

Instead, after the appeal deadline, Plaintiff improperly submitted a Special Kinds of Problems Grievance to the Secretary of Corrections. *See* Doc. 25-1, pp. 14-17. On August 14, 2018, the Secretary of Corrections sent the "Specials Kind of Problems Grievance" back to Plaintiff noting that it was improper and Plaintiff was to follow the proper grievance procedures. *See* Doc. 21-1, p. 15. However, Plaintiff did not ever follow the proper procedure and appeal to the secretary of corrections as required by the KDOC grievance process.

This Court has previously held that a submission of a Special Kinds of Problems Grievance does not satisfy the exhaustion requirements of PLRA. *See Chambers v. Roberts*, No. 13–3195–SAC, 2013 WL 6670521, at *6 (D. Kan. Dec. 18, 2013) ("The filing of a 'special problems' grievance to the Secretary, rather than following the steps in the KDOC grievance process, does not amount to full exhaustion where, as here, the Secretary determined that the grievance was not appropriate for special problems treatment."); *Smith v. Roberts*, 393 P.3d 1058 (table opinion),

---

[1] The Declaration of Darcie Holthaus is provided only to assist the Court in organizing the various documents that have previously been provided by Plaintiff in his numerous filings.  The at issue Special Kinds of Problems Grievance which is attached to the Declaration, has previously been provided to the Court by Plaintiff at Doc. 21-1, p. 15, Doc. 25-1, pp. 16-17; and Doc. 25-1, pp. 14-15.

2017 WL 1367053, at *4 (Kan. Ct. App. Apr. 14, 2017) ("[R]ather than address the Unit Team's lack of timely response with the warden, per K.A.R. 44-15-102(a), Smith bypassed the warden and requested a resolution through the Special Kinds of Problems regulation with the Secretary. In so doing, Smith failed to follow the established procedures in a way that could reasonably be construed as exhausting his administrative remedies."); *see also Brown v. Schnurr*, No. 21-3105-JAR-GEB, 2022 WL 3646248, at *3, *6 (D. Kan. Aug. 24, 2022).

The appeals to the warden and to the secretary of corrections are required steps for exhaustion under the PLRA, *see* K.A.R. § 44-15-101(d); 44-15-102(a)-(c), and Plaintiff did not complete them before pursuing his § 1983 claim. *See* 42 U.S.C. § 1997e(a); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Under the [PLRA], a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA[.]").

In addition, in responding to co-defendants' Motion to Dismiss [Doc. 58], Plaintiff appeared to concede that he did not comply with the exhaustion requirements but said that was because it was unavailable because KDOC personnel failed to respond to the grievances.

As noted in the grievance procedure, if the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey v. Cook*, 19-3094-HLT, 2021 WL 483855, at *3 (D. Kan. Feb. 4, 2021); K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).  As demonstrated by the documents attached by Plaintiff to his pleadings to date, Plaintiff failed to properly or timely appeal to the secretary of corrections as required by the four-step grievance process.  *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c); *see also* Doc. 1-1; Doc. 21-1; Doc. 25-1; and Doc. 39-1.

Plaintiff attached a grievance form dated May 25, 2018 (Doc. 25-1, p. 10), which would make the latest deadline to appeal to the warden June 4, 2018 (Doc. 25-1, pp. 14-15).[2] Instead, after the appeal deadline, Plaintiff improperly submitted a Special Kinds of Problems Grievance to the Secretary of Corrections. *See* Doc. 25-1, pp. 16-17.  On August 14, 2018, the Secretary of Corrections sent the "Specials Kind of Problems Grievance" back to Plaintiff noting that it was improper and Plaintiff was to follow the proper grievance procedures. *See* Doc. 21-1, p. 15. However, Plaintiff did not ever follow the proper procedure and appeal to the secretary of corrections as required by the KDOC grievance process.

In his Response [Doc. 58], it appears that Plaintiff argues that he did not complete the grievance process because he did not receive a response and therefore, the grievance process was unavailable.  Simply failing to respond to particular grievances does not make the process a "simple dead end." *Ross v. Blake*, 578 U.S. 632, 643 (2016). A "dead end" requires a wholesale failure to ever respond to grievances such that "the facts on the ground demonstrate" that no possibility of any relief exists. *Id.* Tenth Circuit precedent establishes that when the regulation explicitly provides for an appeal after a failure to respond (like in K.A.R. 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), and (c)(1)) that remedies *are* considered available:

> While we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable, [citations omitted] that is not what happened here. . . . [T]he grievance policy contains time limits on responses, and also provides that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission

---

[2] It appears Plaintiff is arguing that the grievance was dated May 28, 2018.  Regardless, the deadline to appeal to the warden based on that date would be no later than June 10, 2018.  Plaintiff suggests the deadline would be June 15, 2018, but by Plaintiff's own admission, the "special procedures" grievance he allegedly sent to the warden was filed after even that alleged deadline, on June 17, 2018.  Furthermore, even if the June 17, 2018, "special procedures" grievance was considered a timely appeal to the warden, the deadline to appeal to the secretary would be June 30, 2018.  However, again, based on Plaintiff's own admission, the "special procedures" grievance he sent to the Secretary is dated July 3, 2018.  Even his alleged attempt to submit a grievance appeal form on July 1, 2018, to UT Mercer was after the deadline.  Therefore, Plaintiff failed to comply with multiple relevant deadlines and used the wrong procedure (the "special kinds of problems" procedure).

9

>to an administrative review authority.
>
>[The inmate] may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them and since he may now be time barred from pursuing them, they are exhausted by default. This would trivialize the Supreme Court's holdings in *Booth* and *Porter* that exhaustion is now mandatory.

*Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 740 (2001) and *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see also Lindsey*, 2021 WL 483855, at *3 (discussing the remedy available to KDOC inmates when prison officials do not timely respond); *Brown v. Schnurr,* No. 22-3183, 2023 WL 5163987, *4 (10th Cir. Aug. 11, 2023).

Plaintiff also appears to argue that the process is too "opaque" and "incapable of use." But to be so "opaque" as to be unavailable, the rules have to be "so confusing that no reasonable prisoner can use them. *Ross*, 578 U.S. at 644. Plaintiff appears to argue that statements by UT Mercer in July 2018 constituted "machination, misrepresentation, or intimidation" but this allegedly occurred *after* the appeal deadline, so he had already failed to exhaust. *See id.* at 644. Therefore, the grievance process was not unavailable and Plaintiff was required to comply prior to filing suit.

Therefore, this Court should dismiss Plaintiff's claims for failure to exhaust.

### B. In the alternative, Count I as to Defendant Dowling should be dismissed as Plaintiff has failed to state a claim upon which relief can be granted

"In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that each defendant acted under color of state law and that he or she violated a right secured by the Constitution." *Richey v. Ferguson*, 05-5162, 2007 WL 710129, at *18 (W.D. Ark. Mar. 6, 2007). "Mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983." *Id*. A mere difference of opinion regarding medical care does not support a Section 1983 claim. *Sandifer v. Green*, 126 Fed.Appx. 908, 911 (10th Cir. 2005). Simply stated, a prisoner's

10

disagreement or dissatisfaction with treatment offered is not sufficient to establish deliberate indifference. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

In order for an inmate to allege a claim based on inadequate medical care, the plaintiff must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" test has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious;" and (2) "a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

To satisfy the objective component, "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must **both** be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (citation and quotation omitted) (emphasis added). The Defendant must "consciously disregard[] a substantial risk of serious harm." *Thomas v. Bruce*, 428 F.Supp. 2d 1161, 1170 (D. Kan. 2006). In other words, Plaintiff must allege that a prison official **knows of** and **disregards** an excessive risk to inmate health or safety by failing to take reasonable measures to abate it. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

11

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment **does not** state a constitutional violation." *Sandifer*, 126 Fed.Appx. at 911 (citation omitted) (emphasis added). Simply put, "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment." *Smith v. Harvey County Jail*, 889 F.Supp. 426, 430 (D. Kan. 1995).

A claim for deliberate indifference based on delay must allege substantial physical harm resulting from the delay in treatment. *Bafford v. McNickle*, 08-3095-SAC, 2009 WL 2899802, at *2 (D. Kan. Sept. 4, 2009). A delay in providing medical care does not violate the eighth amendment unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993).

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years.

*Freeman v. Strack*, No. 99 CIV. 9878 (AJP), 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000).

Plaintiff has only alleged injuries as a result of the automobile accident.[3] Plaintiff has not alleged any additional injuries caused by the alleged "delay" of medical care by Defendant Dowling. Although Plaintiff has alleged he was "denied" medical care, in the Second Amended Complaint, he admits he was in fact provided care by Dr. Harrod. As noted above, a Section 1983 claim cannot survive when there is merely a disagreement on what type of medical care should be received --- in this case, care at the scene by EMTs versus medical staff at EDCF. *See Smith v.*

---

[3] The Court has previously dismissed the claims against Defendants as it relates to the accident itself. *See* Memorandum and Order, Doc. 22, p. 8. Therefore, the allegations by Plaintiff against Defendant Dowling about texting is irrelevant to the claims in this case.

*Harvey County Jail*, 889 F.Supp. at 430. Plaintiff's own allegations demonstrate that he was receiving care from EDCF medical staff, just not the care he wanted to receive. Further, his injury was not so urgent to require treatment at an emergency room, as demonstrated by the fact that Dr. Harrod did not have him transferred out, and instead provided treatment in the infirmary at EDCF.

Further, as previously noted by the Court, Plaintiff has alleged that Defendant Corby made a call and only after making the phone call, it was decided that Plaintiff would be transferred back to the facility. *See* Memorandum and Order, Doc. 22, pp. 12-13. As this Court previously noted, it does not appear that the decision on where medical care was to be provided was made by Defendant Dowling. *See* Memorandum and Order, Doc. 22, pp. 12-13.

Therefore, based on the above and foregoing, Plaintiff has failed to state a claim upon which relief can be granted as to Defendant Dowling and Defendant Dowling should be dismissed from this action.

### C. Plaintiff's Motion to Construe Plaintiff's Claim for Unsafe Conditions should be denied [Doc. 34]

After the screening of the Second Amended Complaint, the Court entered its Order that this matter should proceed under the Second Amended Complaint. *See* Order, Doc. 27. Since the filing of the Second Amended Complaint, the Plaintiff has filed additional copies of his affidavit, Docs. 26 and 30, and a "Motion Requesting that the Court Construes Plaintiff's Claim of Unsafe Conditions that Violated Plaintiff Eighth Amendment Be Raised," Doc. 34. To the extent this pleading is an attempt by Plaintiff to file a Third Amended Complaint, this request should be denied.

As an initial matter, Plaintiff has failed to comply with D.Kan. Rule 15.1(a)(2) in that he has not "attached the proposed pleading or other document" to the Motion.

Further, Plaintiff has already been granted multiple opportunities to file amended

13

complaints.  *See* Docket.  The currently controlling complaint, the Second Amended Complaint, has been screened and served on all parties.  "A party may amend its pleading *once* as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a) (emphasis added). When a pro se inmate seeks leave to file an amended complaint after screening has already occurred and after already amending the complaint once, the requested amendment can be "untimely under the circumstances," and "[u]ndue delay is sufficient reason to deny leave to amend." *Neusteter v. Cossobone*, 62 F. App'x 844, 845 n.1 (discussing screening), 846 (finding undue delay) (10th Cir. 2003).

Here, it appears that Plaintiff is seeking leave to file a Third Amended Complaint after screening has already occurred and after already amending the complaint twice. Therefore, to the extent Plaintiff is seeking to file a Third Amended Complaint, such a request should be denied.

## VI.     CONCLUSION

WHEREFORE, Defendant Eyman Dowling requests an Order from this Court dismissing Plaintiff's Second Amended Complaint, and for such other relief as is just and necessary.

Respectfully submitted,

 */s/ Tracy M. Hayes*
Tracy M. Hayes         KS #23119
SANDERS WARREN & RUSSELL LLP
Compass Corporate Centre
11225 College Blvd., Suite 450
Overland Park, KS  66210
Phone:  913.234.6100
Fax:     913.234.6199
t.hayes@swrllp.com
**ATTORNEYS FOR BRETT CORBY, ALEX McCOLLOUGH AND EYMAN DOWLING**

## CERTIFICATE OF SERVICE

  I hereby certify that on the 24th day of August, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.  I hereby further certify a copy of the foregoing was sent via U.S. Mail postage prepaid to the following:

  Gustin C. Brownlee #73693
  EL Dorado Correctional Facility – Central
  PO Box 311
  El Dorado, KS 67042


                 */s/ Tracy M. Hayes*
                 **Attorney**