## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GUSTIN C. BROWNLEE,**

       **Plaintiff,**

       **v.**

**BRETT CORBY,**
**et al.,**
       **Defendants.**

**Case No. 20-3122-JAR-GEB**

## MEMORANDUM AND ORDER

Plaintiff Gustin Brownlee, a prisoner proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action alleging that Defendants Brett Corby, Eyman Dowling, and Alex McCollough, all security guards at El Dorado Correctional Facility ("EDCF"), violated his Eighth and Fourteenth Amendment rights.  He alleges that Corby and Dowling were deliberately indifferent to his serious medical needs following an automobile accident on May 23, 2018, while he was being transported from EDCF to an outside medical appointment (Count 1), and that McCollough aggravated his pain and injuries by using excessive force after the accident (Count 2).  The Honorable Sam A. Crow screened the Second Amended Complaint ("SAC") under 28 U.S.C. § 1915A and permitted Plaintiff to move forward with his federal constitutional claims against Defendants.[1]

Now before the Court are the Motion to Dismiss Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6), filed jointly by Corby and McCollough (Docs. 38);[2] and Plaintiff's Motions for Leave to Amend Second Amended Complaint (Docs. 34, 40).  Plaintiff

---

[1] Doc. 27.

[2] Defendant Dowling's Motion to Dismiss (Doc. 69) will be addressed in a separate order.

has also filed a Motion for Leave to File Out of Time (Docs. 67) and Motion for Leave to File Rebuttal Opposition to Motion to Dismiss Out of Time (Doc. 68), which the Court construes as seeking leave to file a surreply to Defendants' motion to dismiss.  The matter is fully briefed, and the Court is prepared to rule.[3]  For the reasons discussed below, the Court grants Plaintiff's motions for leave to file a surreply; denies Defendants' motion to dismiss for failure to administratively exhaust and, alternatively, for failure to state a claim; and denies Plaintiff's motions for leave to amend.

## I.      Legal Standard

Defendants move to dismiss based on Plaintiff's failure to exhaust his administrative remedies before bringing suit as required by the Prison Litigation Reform Act ("PLRA") and, alternatively, Plaintiff's failure to state a claim.   Although Defendants seek dismissal under both Fed. R. Civ. P. 12(b)(1) and (6), "[i]n the Tenth Circuit,  . . . plaintiff's failure to exhaust is not jurisdictional and a motion based upon failure to exhaust is properly brought under Rule 12(b)(6) for failure to state a claim—not under Rule 12(b)(1) for lack of subject matter jurisdiction."[4] Thus, Defendants' motion to dismiss for failure to exhaust must be considered under Rule 12(b)(6), as must their alternative argument for failure to state a claim.

To survive a motion to dismiss brought under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

---

[3] Plaintiff was granted numerous extensions of time to respond to Defendants' motion to dismiss.  *See* Docs. 44, 47, 49, 53, 57.

[4] *Echtinaw v. Lappin*, No. 08-3011-KHV, 2009 WL 604131, at *5 (D. Kan. Mar. 9, 2009) (first citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1208 (10th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), and then citing *Canady v. Werholtz*, No. 04-2083-GTV, 2004 WL 1212050, at *2 (D. Kan. June 1, 2004)); *see also Johnson v. Aucoin*, No. 18-cv-00194, 2020 WL 5016912, at *2 (D. Colo. Aug. 24, 2020) (stating that while exhaustion of remedies is mandatory, "a plaintiff's failure to exhaust administrative remedies does not divest the Court of subject matter jurisdiction") (citation omitted)).

support for *these* claims."[5]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[6]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all of the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

Although the court typically may not look beyond the pleadings on a Rule 12(b)(6) motion to dismiss without treating the motion as one for summary judgment under Rule 56, the

---

[5] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[10] *Id.* at 678−79.

[11] *Id.* at 679.

[12] *Id.* at 678.

court may consider documents that are attached to or referenced in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.[13]

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which applies to attorneys.[14] "Nevertheless, [Plaintiff] bears 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[15] The Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[16] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[17]

## II.     Procedural and Factual Background

On screening of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A—which requires the court to review a prisoner's case for frivolousness, maliciousness, or failure to state a claim[18]—the court employed the same standard used for Rule 12(b)(6) motions, in particular the requirement that "a plaintiff must 'nudge his claims across the line from conceivable to

---

[13] *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (citing Fed. R. Civ. P. 12(d)); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.").

[14] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[15] *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[16] *Whitney*, 113 F.3d at 1173–74 (citing *Hall*, 935 F.2d at 1110).

[17] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[18] 28 U.S.C. § 1915A(b).

plausible.'"[19]  The court held that the allegations regarding the deliberate indifference claim in Count 1 were cursory and lacking in factual detail, but close to meeting the elements of a plausible claim of deliberate indifference.[20]  The court further found that the allegations of excessive force against McCollough in Count 2 lacked allegations regarding his intent in using force and details as to the pain and injury resulting from this use of force.[21]  The court gave Plaintiff the opportunity to amend his complaint to cure these deficiencies.  Plaintiff filed a SAC on August 15, 2022, which is now the operative complaint in this case, and the following facts are drawn from that pleading or in documents attached to thereto, and viewed in the light most favorable to Plaintiff as the nonmoving party.

On May 23, 2019, Plaintiff was incarcerated at EDCF.  While being transported from EDCF to an outside medical appointment by Dowling and Corby, the transport van was involved in a five-vehicle collision while Dowling was texting and driving.  Plaintiff alleges that Corby failed to restrain Plaintiff into the van seat the "correct way."[22] According to the police report attached to Plaintiff's SAC, the transport van's front end and engine were damaged when the van collided with the rear end of the vehicle in front of it, and the vehicle had to be towed from the scene.  The police report also states that "[t]he prisoner complained of injuries as a result of the accident, however, KDOC employees transported him back to EDCF to be examined."[23] Plaintiff claims that he was injured in the accident, specifically a bruised spinal cord and damaged nerve.

---

[19] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[20] Doc. 22 at 12.

[21] *Id.* at 14.

[22] Doc. 25-1 at 3.

[23] *Id.* at 55.

While he was getting Plaintiff into the transport van before the collision, Dowling noticed that Plaintiff was moving abnormally.  Plaintiff explained that he still suffered pain from injuries he received in a previous car accident.  After the collision, Plaintiff informed Dowling that his spinal cord was injured, that the collision reinjured his previous injuries, that he was in tremendous pain, and that he needed to be seen and treated by emergency medical personnel at the scene.  Dowling laughed at the request, mocked Plaintiff, and told Plaintiff he did not believe that he was injured.

Corby and Dowling told Plaintiff that they decided that he did not have a serious medical need, he would not be seen by emergency personnel at the scene of the accident, and that a van would be called to take Plaintiff back to EDCF instead.  When McCollough arrived to transport him to EDCF, Plaintiff told him that he was injured and unable to walk, and needed medical assistance in order to exit the van.  McCollough threatened to use force if Plaintiff did not get out of the van unassisted and accused him of faking his injuries and "acting like a bitch."[24]  Over an hour after the collision occurred, McCollough laughed as he forcefully and maliciously grabbed and dragged Plaintiff out of the wrecked van, threw him into another van, kneed and punched him, and caused Plaintiff excruciating pain.

Plaintiff was seen by Dr. Harrod when he returned to EDCF and the doctor did an assessment of his injuries.   Dr. Harrod told EDCF staff that Plaintiff should have been taken to a hospital after the collision and asked why Plaintiff was still handcuffed.  Plaintiff claims that had Corby not denied and delayed proper medical care at the scene, Plaintiff would have received a proper medical diagnosis and he would not have been mishandled and attacked by McCollough, which aggravated the injuries he received in the accident.  Plaintiff was in the EDCF infirmary

---

[24] *Id.* at 4.

for several days and used a walker and a wheelchair into the month of June.  He claims that as a result of these incidents, he received serious injury and permanent damage to his back and neck.

Plaintiff attached documents to the SAC regarding his exhaustion of administrative remedies.  Plaintiff completed an Inmate Grievance Form dated May 25, 2018, complaining that EDCF staff members' negligent actions caused a vehicle accident in which he was injured and that staff members were physically and verbally abusive toward him when they should have offered him help.[25]  This report was given to Plaintiff's Unit Team, who was to respond to Plaintiff within ten calendar days.  In his Inmate Request to Staff Member dated May 28, 2018, Plaintiff relayed the circumstances and aftermath of the transport van accident and requested an investigation of the staff members for their actions.[26]  Plaintiff further stated that Corby "was really nice to me during the incident.  I don't believe he should be punished in any kinda [sic] way,"[27] and that Dowling's negligent actions caused the van accident.

After Plaintiff received no response to his initial grievance, he submitted a "Special Procedure" correspondence to the Warden dated June 19, 2018.  After receiving no response, he submitted the correspondence to the Secretary of Corrections dated July 3, 2018.[28]  On August 14, 2018, Plaintiff was notified by the Secretary that his Special Kind of Problems Grievance pursuant to K.A.R. § 44-15-201 was improper and that his claim should be handled by the inmate grievance procedure available at EDCF.[29]  The Secretary explained that the matters raised by Plaintiff did not constitute difficult or complex problems justifying special treatment, but

---

[25] *Id.* at 10

[26] *Id.* at 8–9.

[27] *Id.* at 9.

[28] *Id.* at 11–16.

[29] Doc. 21-1 at 15–16.

instead, they were they type of problems that may be handled internally by the correctional facility.

Plaintiff then submitted an Informal Resolution Inmate Request to Staff Member dated September 21, 2018, which he explained that he was filing after receiving direction from the Secretary. Plaintiff stated that he sought help from EDCF staff member Samson, and he complained that his Unit Team Members did not respond in a timely manner.[30] He followed up on October 30, 2018, with an Inmate Request to Staff Member asking about the status of a response to his previous informal resolution request.[31]

## III.   Discussion

Plaintiff invokes 42 U.S.C. § 1983 as the basis for his claims. To state a claim for relief under § 1983, a plaintiff must allege "(1) deprivation of a federally protected right by (2) an actor under color of state law."[32] A viable § 1983 claim must show how each named defendant caused a violation of the plaintiff's constitutional rights.[33] Plaintiff alleges claims against Corby and Dowling for deliberate indifference to his serious medical needs, and against McCollough for excessive use of force. Corby and McCollough move to dismiss for failure to exhaust administrative remedies and alternatively, Corby moves to dismiss Count 1 for failure to state a claim upon which relief can be granted. The Court addresses these grounds for dismissal in turn, then addresses Plaintiff's request for leave to amend.

---

[30] Doc. 25-1 at 18.

[31] *Id.* at 20.

[32] *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)).

[33] *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020).

A.      **Failure to Exhaust Administrative Remedies**

Under the PLRA, an inmate must exhaust his administrative remedies before filing suit under § 1983.[34]  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[35]  An "inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."[36]  Even if the inmate begins the grievance procedure, if he does not complete it, he is barred from pursuing relief under § 1983.[37]

The exhaustion requirement is not left to the district court's discretion but rather is mandatory, with one qualifier—the administrative "remedies must indeed be 'available' to the prisoner.'"[38]  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy unavailable and a court will excuse the prisoner's failure to exhaust."[39]  For example, while a grievance procedure "need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to [its] meaning,"[40] an inmate's duty to exhaust may be excused where "a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands."[41]  While an inmate's failure to exhaust does not deprive the court of jurisdiction, "unexhausted claims cannot

---

[34] 42 U.S.C. § 1997e(a).

[35] *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

[36] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)); *see Lindsey v. Cook*, No. 5:19-cv-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (stating that the exhaustion process requires "complying with 'an agency's deadlines and other critical procedural rules.'") (quoting *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020))).

[37] *Little*, 607 F.3d at 1249 (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

[38] *Ross v. Blake*, 578 U.S. 632, 639 (2016).

[39] *Lindsey*, 2021 WL 483855, at *2 (quoting *Gray*, 818 F. App'x at 789); *see Little*, 607 F.3d at 1250.

[40] *Ross*, 578 U.S. at 644 (citations omitted).

[41] *Id.* (first citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007), and then citing *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)).

be brought in court,"[42] and the court "must dismiss any unexhausted claims, though dismissal without prejudice is usually preferable."[43]

Finally, the exhaustion requirement is an affirmative defense under the PLRA.[44]  While Kansas law requires that an inmate file proof that he has exhausted his administrative remedies with a petition alleging *state-law* claims, the PLRA does not require an inmate to plead or demonstrate exhaustion in his complaint when bringing *federal* claims.[45]  Rather, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."[46]  This means that the defendant carries the burden to prove both that administrative remedies were available and that the plaintiff failed to exhaust those remedies.[47]

The Tenth Circuit has cautioned that while inmates no longer have the duty of pleading exhaustion, the district court should only grant a Rule 12(b)(6) motion to dismiss for failure to exhaust in "'rare cases' in which 'it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies.'"[48]  Because Plaintiff attaches grievance documents to his SAC, the Court may properly consider those exhibits within the confines of its Rule 12(b)(6) analysis.  In support of their motion, Defendants rely on the Affidavit of KDOC

---

[42] *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

[43] *Kenney v. Dep't of Corrs.*, No. 18-728, 2020 WL 3496859, at *5 (D.N.M. June 29, 2020) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009)).

[44] *Jones*, 549 U.S. at 216; *Roberts v. Barreras*, 484 F.3d 1236, 1240−41 (10th Cir. 2007).

[45] *Jones*, 549 U.S. at 216; *Sperry v. McKune*, 384 P.3d 1003, 1012−13 (Kan. 2106) (holding that only state-law claims are impacted by K.S.A. § 75-52,138's pleading requirement).

[46] *Roberts*, 484 F.3d at 1241.

[47] *See McKeighan v. Corrs. Corp. of Am.*, No. 08-3173-SAC, 2010 WL 446503, at *2 (D. Kan. Feb. 4, 2010) (citing *Purkey v. CCA Detention Center*, 263 F. App'x 723, 726 (10th Cir. 2008) (holding to sustain their burden of proof for exhaustion of remedies affirmative defense, movants must prove that "administrative remedies were, in fact, available" to plaintiff and that he "failed to exhaust these remedies.")).

[48] *See Lax v. Corizon Med. Staff*, 766 F. App'x 626, 628 (10th Cir. 2019) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

Corrections Manager, Darcie Holthaus.[49]  As indicated above, under the Rule 12(b)(6) motion to dismiss standard, the Court may not consider documents outside the pleadings, particularly if they rebut, challenge, or contradict the complaint, without converting the motion into one for summary judgment.[50]  Holthaus' Affidavit attempts to contradict Plaintiff's allegation in the SAC that he exhausted his administrative remedies.  Plaintiff asserts that he attempted to comply with the exhaustion requirements but argues that administrative remedies were unavailable to him because KDOC personnel failed to timely respond to his grievances; the grievance process is dysfunctional, opaque, and incapable of use; that statements by a unit team member were misrepresentations or attempts at intimidation; and that EDCF staff refused to help him complete the grievance process.

The Court finds that it is not clear from the face of the SAC that Plaintiff failed to exhaust his administrative remedies.  As set forth above, it is Defendants' burden to assert and prove their affirmative defense that Plaintiff had administrative remedies available to him that he failed to exhaust before bringing suit.  While Plaintiff has attached grievance documents to the SAC, the Court cannot verify that this is the entire grievance record without considering Holthaus' Affidavit.  Further, nothing on the face of the SAC plainly addresses or resolves the issue of whether administrative remedies were actually available to Plaintiff.  The Court cannot resolve this disputed issue of fact on a motion to dismiss and declines to convert Defendants' motion into a motion for summary judgment.[51]

---

[49] Doc. 39-1.

[50] Fed. R. Civ. P. 12(d).

[51] *See Pool v. Cnty. of Otero*, 271 F.3d 955, 957 n.2 (10th Cir. 2010) (stating that a district court has discretion to decide whether to convert a motion to dismiss into motion for summary judgment) (citation omitted), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006)).  The Court notes that on summary judgment, courts utilize a burden-shifting approach on this issue: once a defendant carries its burden to prove that the plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d

McCollough makes the additional argument that Plaintiff failed to exhaust his excessive force claim because he never alleged in his grievances that McCollough punched him, but only added this new allegation to the SAC after the Court issued its screening orders permitting him to amend his claim to provide more detail. McCollough, however, cites to no authority for this argument. Nor does the PLRA impose such a requirement. The Supreme Court has explained, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[52] Nothing in the KDOC grievance policy supports the conclusion that the grievance process was improperly invoked simply because an individual later provided more detail about an incident than at the first step of the grievance process.[53]

Thus, Defendants' motion to dismiss for failure to exhaust is denied.

## B.      Failure to State a Claim

In bringing a § 1983 claim for deliberate indifference to his medical needs, the plaintiff as a convicted person has his rights protected under the Eighth Amendment.[54] In order for an inmate to allege a claim for violation of the Eighth Amendment based on inadequate medical care, the inmate must establish "deliberate indifference to serious medical needs."[55] The

---

1249, 1254 (10th Cir. 2011)). Courts in this district have found that a defendant satisfies its initial burden on a failure to administratively exhaust defense where the defendant provides an affidavit from a facility records custodian that explains that they reviewed the grievance records and found evidence that a plaintiff started but did not complete the grievance procedure. *See Lynn v. Willnauer*, No. 19-3117-HLT, 2023 WL 3568662, at *10 (D. Kan. May 19, 2023) (citing *Lewis v. Carrell*, No. 12-3112-DDC, 2014 WL 4450147, at *10 (D. Kan. 2014) (citation omitted)). The burden then shifts to the plaintiff to demonstrate with specificity that there is an issue of material fact on the exhaustion issue. *Id.*

[52] *Jones v. Bock*, 549 U.S. 199, 218 (2007).

[53] *See* K.A.R. § 44-15-101 (setting forth the four-step KDOC grievance process for prisoner § 1983 claims).

[54] *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

[55] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"deliberate indifference" test has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind."[56]  The objective component is met if the deprivation is "sufficiently serious."[57]  "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[58]  The objective component must be evaluated by the actual harm suffered, not by symptoms perceived by the defendant.[59]  The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."[60]

One type of deliberate indifference claim involving prison medical care is "preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition."[61]  In the Tenth Circuit, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," which may be satisfied by "lifelong handicap, permanent loss, or considerable pain."[62]  The court has held that ignoring a prisoner's complaints of reinjury and

---

[56] *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

[57] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[58] *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)); *see also Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 282 (10th Cir. 2012) (stating that medical need is obvious if a "reasonable man," rather than a trained physician, would realize it) (quoting *Farmer*, 511 U.S. at 842).

[59] *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (stating that symptoms displayed are only relevant to the subjective component of the deliberate indifference test).

[60] *Id.* at 751 (quoting *Farmer*, 511 U.S. at 837).

[61] *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock*, 218 F.3d at 1211).

[62] *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (citations and internal quotation marks omitted).

excruciating pain while waiting two hours before providing access to medical care may allege a viable claim of a guard's deliberate indifference in delaying medical treatment.[63]

Corby argues that Plaintiff fails to state a claim for deliberate indifference in Count 1.[64] Corby first argues that a § 1983 claim cannot survive when there is merely a disagreement on what type of medical care should be received, in this case, care at the accident scene by EMTs versus care by medical staff at EDCF.[65]  He argues that while Plaintiff claims that he was denied medical care, he concedes that he was provided care by Dr. Harrod upon return to EDCF after the accident and thus this claim must fail.  The Court disagrees.  Plaintiff is not claiming that he was denied medical care; rather, he is claiming that he did not receive medical attention as quickly as he requested it because medical care for his injuries was denied at the scene of the accident and delayed until he was returned to EDCF.[66]

Corby further argues that the SAC does not allege any additional injuries caused by the purported delay of medical care or that Corby acted with the requisite state of mind.  These arguments are without merit.

First, the objective prong addresses whether Plaintiff's pain or deprivation was sufficiently serious.  In the screening order on the Amended Complaint, the court noted that plausibility demanded more facts on this prong, including "how the accident caused [Plaintiff's] injuries, a description of those injuries, and how much time transpired from the accident to the

---

[63] *McCowan v. Morales*, 945 F.3d 1276, 1291–92 (10th Cir. 2019).

[64] In his response and surreply, Plaintiff argues that he also brings a deliberate indifference claim against McCollough.  Plaintiff does not name McCollough in Count 1 of the SAC, however, and there is no allegation that McCollough made the decision on when and where medical treatment was to be provided.  *See* Doc. 22 at 12–13.

[65] *Sandifer v. Green*, 126 F. App'x 908, 911 (10th Cir. 2005).

[66] *See* Doc. 22 at 11.

on-the-scene arrival of the second EDCF van and to his examination back at the infirmary."[67] The SAC provides more details about the accident, alleging that Plaintiff suffered injuries to his spinal cord when the force of the collision threw him forward and backwards; that the second van did not arrive to take him back to EDCF for an hour; and that he argued with McCollough for another half-hour about whether he was too injured to exit the van on his own.  Plaintiff alleges that this delay—where he purportedly remained sitting in the wrecked transport van despite repeated complaints about his pain and requests to receive medical assistance by the responding emergency personnel, followed by the trip back to EDCF—resulted in him suffering over 90 minutes of excruciating pain.  These details suffice to plausibly allege the objective prong of the deliberate-indifference test.[68]

Second, the subjective prong addresses whether Corby acted with "a sufficiently culpable state of mind."[69]  In the screening order on the Amended Complaint, the court held that more detail was needed to make clear how each defendant personally participated in the alleged constitutional violation.  The court reiterated that Plaintiff attached a grievance that stated he reported his injuries and asked for medical treatment at the scene; in response, Corby made a phone call and reported back to Plaintiff that he would not receive medical assistance on the scene or be taken to a hospital but that an EDCF van was coming to get him.  The court held that "[a]bsent allegations showing Corby [and] Dowling . . . were personally involved with deciding when and where [Plaintiff] would be treated for his injuries," Count 1 is subject to dismissal.[70]

---

[67] *Id.* at 12.

[68] *McCowan*, 945 F.3d at 1291–92 (citing *Mata v. Saiz*, 427 F.3d 745, 752–55 (10th Cir. 2005)).

[69] *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (internal quotation marks omitted).

[70] Doc. 22 at 13.

The SAC alleges that Corby stated to Plaintiff that Corby and Dowling decided Plaintiff did not have a serious medical need, that he would not be treated at the scene, and that they decided a van would be called to take him back to EDCF.  Plaintiff alleges that both Corby and Dowling did not believe his claim that he was seriously injured and that Dowling mocked him and accused him of faking his injuries.  Thus, it is plausible that Corby could have relayed Defendants' opinions about whether Plaintiff needed medical treatment at the scene to whoever he spoke to on the phone after the collision.  Accepting these allegations as true—as it must—the Court finds that Plaintiff has also stated a plausible claim against Corby on the subjective prong of his deliberate indifference claim.  Accordingly, the Court declines to dismiss Count 1.

## C.      Leave to Amend

Plaintiff seeks leave to amend to file a Third Amended Complaint to assert an unsafe conditions claim against Corby and Dowling.  "The Eighth Amendment guarantees [Plaintiff] prison conditions that do not 'result in his degeneration' or threaten his mental and physical well-being."[71]  The Court denies Plaintiff's request.

Fed. R. Civ. P. 15(a)(1) permits a party to amend its pleading once as a matter of course, either before the responding party answers or within 21 days after service of a responsive pleading.[72]  In cases such as this, however, where the time to amend as a matter of course has passed, and the opposing party does not consent, a party may amend its pleading only by leave of court under Rule 15(a)(2).[73]  It is well-settled that in ruling on a motion for leave to amend, courts are instructed to "freely give leave when justice so requires," and to deny leave to amend

---

[71] *McKillip v. Norwood*, No. 22-3100, 2022 WL 17069582, at *2 (10th Cir. 2022) (quoting *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977)).

[72] Fed. R. Civ. P. 15(a)(1).

[73] *Id.*

only when an apparent reason, "such as . . . futility of amendment," exists.[74]  Thus, "[a] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[75]

Plaintiff bases his proposed unsafe conditions claim on allegations that Dowling was texting and driving before the accident and that Corby failed to stop him, and that Corby failed to restrain Plaintiff in the van.[76]  However, this Court previously dismissed the claims against Defendants as related to the accident itself, including allegations that Dowling was texting while driving, holding that Plaintiff's negligence allegations against Corby and Dowling do not state a claim under § 1983.[77]  While newly cast as a claim for unsafe conditions under the Eighth Amendment, Plaintiff's amended claim continues to make allegations of negligence against Defendants and is subject to dismissal for the same reasons.  Because this proposed amendment is futile, the Court denies Plaintiff leave to amend his Second Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Corby and McCollough's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 38) pursuant to Fed. R. Civ. P. 12(b)(6) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Amend Second Amended Complaint (Docs. 34, 40) are **denied**.

---

[74] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

[75] *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (citation omitted).

[76] Doc. 40-1 at 2–3.

[77] Doc. 22 at 8 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (explaining "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.")).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Out of Time (Docs. 67) and Motion for Leave to File Rebuttal Opposition to Motion to Dismiss Out of Time (Doc. 68), construed as requests for leave to file a surreply, are **granted**.

**IT IS SO ORDERED.**

Dated: September 27, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE