## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

| | |
|---|---|
| GUSTIN C. BROWNLEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.   20-cv-03122-JAR-GEB |
| | ) |
| BRETT CORBY, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Brett Corby, Eyman Dowling, and Alex McCollough, and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 56.1, move for an Order from the Court granting judgment in their favor on Plaintiff's Second Amended Complaint [Doc. 25] as Plaintiff has failed to meet his burden to establish a constitutional violation and failed to exhaust his administrative remedies.

In support of said Motion, Defendants state as follows:

### I.    NATURE OF CASE

Plaintiff has filed suit alleging that Defendants were deliberately indifferent to his serious medical needs following an automobile accident on May 23, 2018 by taking him back to the correctional facility as opposed to being seen by EMTs at the scene of the accident or taking him to the emergency room.  In addition, Plaintiff has alleged that Defendant McCollough used excessive force after the accident on May 23, 2018.

 Plaintiff initially filed suit on April 28, 2020.  *See* Docket.  After the screening process, on August 15, 2022, Plaintiff filed the Second Amended Complaint [Doc. 25].  The remaining claims in this case are as follows:

(1) **Count I**:  against Defendants Dowling and Corby for violations of the Eighth and Fourteenth Amendment for intentionally denying and delaying proper medical care, treatment and assistance;

(2) **Count II**:   against Defendant McCollough for violations of Plaintiff's rights prohibiting cruel and unusual punishment under the Eighth Amendment by using excessive force and intentionally denied and delayed proper medical care

*See* Second Amended Complaint, Doc. 25, p. 7; Pretrial Order, Doc. 140, p. 4.

## II.    STATEMENT OF MATERIAL UNCONTROVERTED FACTS

1.    On May 23, 2018, Plaintiff was incarcerated at El Dorado Correctional Facility ("EDCF").  Pretrial Order, Doc. 140, Stipulation a.i.

2.    While being transported from EDCF to an outside medical appointment by Defendants Dowling and Corby, the transport vehicle was involved in an automobile accident. Pretrial Order, Doc. 140, Stipulation a.iii.

3.    After the accident, Defendant Brett Corby called EDCF and was told that another transport van would come to the scene to transport Mr. Brownlee back to the facility.  Exhibit A, Affidavit of Brett Corby, ¶ 5.

4.    In his Inmate Request to Staff Member dated 5/28/2018, Plaintiff indicated that after asking if he was okay, Defendant Corby made a phone call and then was told he would not be seen on site and that he was going to be taken back to the infirmary.  Doc. 25-1, p. 8.

5.    Defendant Corby has provided a sworn statement that he did not see any injuries to Mr. Brownlee that required immediate medical attention by EMTs or at an emergency room. Exhibit A, Affidavit of Brett Corby, ¶ 7.

6.    Defendant Corby has provided a sworn statement that he did not disregard any risk to Mr. Brownlee's health or safety.  Exhibit A, Affidavit of Brett Corby, ¶ 8.

7.    In his Inmate Request to Staff Member dated 5/28/2018, Plaintiff indicated that

Defendant Corby "was really nice to me during the incident. I don't believe he should be punished in any kinda [sic] way." Doc. 25-1, p. 9.

8.      Defendant Corby has provided a sworn statement that he believed that Mr. Brownlee would receive appropriate care at the EDCF infirmary. Exhibit A, Affidavit of Brett Corby, ¶ 10.

9.      Defendant Eyman Dowling has provided a sworn statement that he did not see any injuries to Mr. Brownlee that required immediate medical attention by EMTs or at an emergency room. Exhibit B, Affidavit of Eyman Dowling, ¶ 7.

10.      Defendant Dowling has provided a sworn statement that he did not disregard any risk to Mr. Brownlee's health or safety. Exhibit B, Affidavit of Eyman Dowling, ¶ 8.

11.      Defendant Dowling has provided a sworn statement that he believed that Mr. Brownlee would receive appropriate care at the EDCF infirmary. Exhibit B, Affidavit of Eyman Dowling, ¶ 10.

12.      After the accident, Defendant Alex McCollough was ordered to return Mr. Brownlee to EDCF to be evaluated by the EDCF Infirmary. Exhibit C, Affidavit of Alex McCollough, ¶ 5.

13.      Defendant McCollough has provided a sworn statement that he did not see any injuries to Mr. Brownlee that required immediate medical attention by EMTs or at an emergency room. Exhibit C, Affidavit of Alex McCollough, ¶ 10.

14.      Defendant McCollough has provided a sworn statement that he assisted Mr. Brownlee out of the van that was in the automobile accident and into the new transport van and then again out of that transport van when it returned to the facility. Exhibit C, Affidavit of Alex McCollough, ¶¶ 6-7.

15.    Defendant McCollough has provided a sworn statement that he did not disregard any risk to Mr. Brownlee's health or safety.  Exhibit C, Affidavit of Alex McCollough, ¶ 11.

16.    Defendant McCollough has provided a sworn statement that he believed that Mr. Brownlee would receive appropriate care at the EDCF infirmary.  Exhibit C, Affidavit of Alex McCollough, ¶ 14.

17.    Plaintiff admits he was seen by Dr. Harrod when he returned to EDCF and that Dr. Harrod did an assessment for his injuries.  Doc. 25, p. 12.

18.    Plaintiff and Defendants have designated Dr. Harrod as an expert in this matter. Exhibit D, Plaintiff's Expert Designation (Doc. 132); Exhibit E, Defendants' Expert Designation (Doc. 133).

19.    Dr. Harrod is a doctor employed by Centurion, the contracted healthcare provider at EDCF.  Exhibit F, Dr. Harrod Affidavit, ¶ 1.

20.    Dr. Harrod has provided a sworn statement that after the accident Mr. Brownlee was returned to EDCF so that Dr. Harrod could personally evaluate Mr. Brownlee for potential injuries.  Exhibit F, Dr. Harrod Affidavit, ¶ 8.

21.    After the accident, Mr. Brownlee was complaining of primarily low back pain. Exhibit F, Dr. Harrod Affidavit, ¶ 9.

22.    Dr. Harrod has provided a sworn statement that after the accident Mr. Brownlee did not report any physical altercation with security personnel.  Exhibit F, Dr. Harrod Affidavit, ¶ 10.

23.    Dr. Harrod has provided a sworn statement that based on his examination of Mr. Brownlee, it was his opinion that Mr. Brownlee appeared to have a low back strain.  As such, Mr. Brownlee was placed in the EDCF Infirmary for observation and pain management, including an injection of Toradol (an anti-inflammatory) and muscle relaxants.  Exhibit F, Dr. Harrod Affidavit,

¶ 11.

24.    Dr. Harrod has provided a sworn statement that had he observed worrisome symptoms, he would have entered an order to have him transported via ambulance to an ER. Exhibit F, Dr. Harrod Affidavit, ¶ 13.

25.    Dr. Harrod has provided a sworn statement that based on his observations of Mr. Brownlee immediately after the motor vehicle accident, Mr. Brownlee did not have serious medical need that required immediate medical treatment beyond what could be provided at the EDCF Infirmary.  Exhibit F, Dr. Harrod Affidavit, ¶ 14.

26.    Dr. Harrod has provided a sworn statement that it is his medical opinion that Mr. Brownlee's injuries were of such nature that they could be monitored and treated at EDCF and he did not require treatment at an emergency room.  Exhibit F, Dr. Harrod Affidavit, ¶ 15.

27.    Dr. Harrod has provided a sworn statement that it is his medical opinion that Mr. Brownlee was not denied any treatment required related to the injuries he alleged as a result of the motor vehicle accident.  Exhibit F, Dr. Harrod Affidavit, ¶ 18.

28.    Dr. Harrod has provided a sworn statement that it is his medical opinion that there was no delay in providing Mr. Brownlee treatment related to the injuries he alleged as a result of the motor vehicle accident.  Exhibit F, Dr. Harrod Affidavit, ¶ 19.

29.    Dr. Harrod has provided a sworn statement it is his medical opinion that Mr. Brownlee's ongoing pain complaints are due to degenerative changes and not caused by the motor vehicle accident.  Exhibit F, Dr. Harrod Affidavit, ¶ 21.

30.    Mr. Brownlee was seen by a neurosurgeon who determined that these degenerative changes were the cause of his radicular pain but that surgery was not necessary.  Exhibit F, Dr. Harrod Affidavit, ¶ 22.

31.    Darcie Holthaus is employed by Kansas Department of Corrections and handles inmate grievances.  Exhibit G, Declaration of Darcie Holthaus, ¶¶ 1-2.

32.    Ms. Holthaus has reviewed Mr. Brownlee's grievances related to the automobile accident.  Exhibit G, Declaration of Darcie Holthaus, ¶ 5.

33.    Mr. Brownlee submitted a Special Kind of Problems Grievance to the Secretary of Corrections on August 14, 2018.  Exhibit G, Declaration of Darcie Holthaus, ¶ 5.

34.    Plaintiff has admitted he was notified that his Special Kinds of Problems Grievance was improper and that it should be handled by the inmate grievance procedure.  Doc. 21-1, p. 15 – 16.

35.    Mr. Brownlee has not submitted any other grievance appeals to the Secretary of Corrections regarding the automobile accident in May 2018.  Exhibit G, Declaration of Darcie Holthaus, ¶ 6.

### III.    STATEMENT OF QUESTIONS PRESENTED

A.    Has Plaintiff exhausted his administrative remedies?

B.    On May 23, 2018, did Plaintiff has a serious medical need as required to make a claim for deliberate indifference under the Eighth Amendment and Fourteenth Amendment?

C.    Has Plaintiff stated a claim for deliberate indifference to a serious medical need against Defendant Corby, Defendant Dowling or Defendant McCollough?

D.    Has Plaintiff stated a claim for excessive use of force against Defendant McCollough?

E.    Is Plaintiff entitled to punitive damages?

### IV.    STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *McCoy v. Meyers*, 887 F.3d 1034, 1044

(10th Cir. 2018). The court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *Id.* "[W]hile courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Facts must be shown through affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

> [T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. [citation omitted] To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant.

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

## V.    <u>ARGUMENT AND AUTHORITIES</u>

### A. Defendants are entitled to judgment as a matter of law and Plaintiff's Second Amended Complaint [Doc. 25] should be dismissed as Plaintiff has failed to exhaust his administrative remedies

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq*., and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, Plaintiff's § 1983 claim falls under this regulation because his complaint involves the actions of employees at EDCF. *See Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021); K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

Here, Plaintiff did not complete the KDOC grievance process prior to filing the instant action. Exhibit G, Declaration of Darcie Holthaus, ¶ 6. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to

exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Plaintiff failed to properly or timely appeal to the secretary of corrections as required by the four-step grievance process. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c); *see also* Doc. 1-1; Doc. 21-1; Doc. 25-1; Exhibit G, Declaration of Darcie Holthaus. Plaintiff attached a grievance form dated May 25, 2018 (Doc. 25-1, p. 10), which would make the latest deadline to appeal to the warden June 4, 2018.

Instead, after the appeal deadline, Plaintiff improperly submitted a Special Kinds of Problems Grievance to the Secretary of Corrections. *See* Doc. 25-1, pp. 14-17. On August 14, 2018, the Secretary of Corrections sent the "Specials Kind of Problems Grievance" back to Plaintiff noting that it was improper and Plaintiff was to follow the proper grievance procedures. *See* Doc. 21-1, p. 15; Exhibit G, p. 3. However, Plaintiff never appealed to the secretary of corrections as required by the KDOC grievance process. Exhibit G, Declaration of Darcie Holthaus, ¶ 6.

This Court has previously held that a submission of a Special Kinds of Problems Grievance does not satisfy the exhaustion requirements of PLRA. *See Chambers v. Roberts*, No. 13–3195–SAC, 2013 WL 6670521, at *6 (D. Kan. Dec. 18, 2013) ("The filing of a 'special problems' grievance to the Secretary, rather than following the steps in the KDOC grievance process, does not amount to full exhaustion where, as here, the Secretary determined that the grievance was not appropriate for special problems treatment."); *Smith v. Roberts*, 393 P.3d 1058 (table opinion), 2017 WL 1367053, at *4 (Kan. Ct. App. Apr. 14, 2017) ("[R]ather than address the Unit Team's lack of timely response with the warden, per K.A.R. 44-15-102(a), Smith bypassed the warden and requested a resolution through the Special Kinds of Problems regulation with the Secretary. In so doing, Smith failed to follow the established procedures in a way that could reasonably be

construed as exhausting his administrative remedies."); *see also Brown v. Schnurr*, No. 21-3105-JAR-GEB, 2022 WL 3646248, at *3, *6 (D. Kan. Aug. 24, 2022).

The appeals to the warden and to the Secretary of Corrections are required steps for exhaustion under the PLRA, *see* K.A.R. § 44-15-101(d); 44-15-102(a)-(c), and Plaintiff did not complete them before pursuing his § 1983 claim. *See* 42 U.S.C. § 1997e(a); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Under the [PLRA], a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA[.]").

In responding to previously filed Motions to Dismiss, Plaintiff admitted facts showing that he did not comply with the exhaustion requirements but argued that was because administrative remedies were unavailable due to KDOC personnel failing to respond to the grievances. (Doc. 90 at 12-23; Doc. 58 at 12-16.)

As noted in the grievance procedure, if the inmate does not receive a response at steps two or three, within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey v. Cook*, 19-3094-HLT, 2021 WL 483855, at *3 (D. Kan. Feb. 4, 2021); K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1). Plaintiff failed to properly or timely appeal to the secretary of corrections as required by the four-step grievance process. *See* K.A.R. 44-15-101(b), (d); 44-15-102(a)-(c); *see also* Doc. 1-1; Doc. 21-1; Doc. 25-1; and Exhibit G.

Plaintiff attached a grievance form dated May 25, 2018 (Doc. 25-1, p. 10), which would make the latest deadline to appeal to the warden June 7, 2018.[1] Instead, after the appeal deadline,

---

[1] It appears Plaintiff is arguing that the grievance was dated May 28, 2018. *See* Doc. 90 at 13; Doc. 58 at 13. Regardless, the deadline to appeal to the warden based on that date would be no later than June 10, 2018. Plaintiff

Plaintiff improperly submitted a Special Kinds of Problems Grievance to the Secretary of Corrections, mailed on July 3, 2018. *See* Doc. 25-1, pp. 16-17. On August 14, 2018, the Secretary of Corrections sent the "Specials Kind of Problems Grievance" back to Plaintiff noting that it was improper and Plaintiff was to follow the proper grievance procedures. *See* Doc. 21-1, p. 15; Exhibit G, p. 3. However, Plaintiff did not ever follow the proper procedure and appeal to the secretary of corrections as required by the KDOC grievance process.

As it relates to Plaintiff's argument that the grievance procedure was "unavailable" (Doc. 90 at 15, 17-19, 22-23; Doc. 58 at 16), simply failing to respond to particular grievances does not make the process a "simple dead end." *Ross v. Blake*, 578 U.S. 632, 643 (2016). A "dead end" requires a wholesale failure to ever respond to grievances such that "the facts on the ground demonstrate" that no possibility of any relief exists. *Id.* Tenth Circuit precedent establishes that when the regulation explicitly provides for an appeal after a failure to respond (like in K.A.R. 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), and (c)(1)) that remedies *are* considered available:

> While we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable, [citations omitted] that is not what happened here. . . . [T]he grievance policy contains time limits on responses, and also provides that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review authority.

> [The inmate] may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them and since he may now be time barred from pursuing them, they are exhausted by default. This would trivialize the Supreme Court's holdings in *Booth* and *Porter* that exhaustion is now mandatory.

*Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (citing *Booth v. Churner*, 532 U.S.

---

incorrectly suggests the deadline would be June 17, 2018 (Doc. 90 at 14; Doc. 58 at 13). By Plaintiff's own admission, the appeal he allegedly sent to the warden was not sent until June 17, 2018 (Doc. 90 at 15; Doc. 58 at 14), and the "special procedures" grievance he allegedly sent to the warden was filed on June 19, 2018 (Doc. 90 at 15; Doc. 58 at 14-15; Doc. 25-1 at 14-15). Therefore, Plaintiff failed to comply with deadlines and used the wrong procedure (the "special kinds of problems" procedure).

731, 740 (2001) and *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see also Lindsey*, 2021 WL 483855, at *3 (discussing the remedy available to KDOC inmates when prison officials do not timely respond); *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, *4 (10th Cir. Aug. 11, 2023).

Plaintiff also appears to argue that the process is too "opaque" and "incapable of use." Doc. 90 at 22; Doc. 58 at 16. But to be so "opaque" as to be unavailable, the rules have to be "so confusing that no reasonable prisoner can use them. *Ross*, 578 U.S. at 644. Plaintiff appears to argue that statements by UT Mercer in July 2018 constituted "machination, misrepresentation, or intimidation" (Doc. 58 at 16; *see also* Doc. 90 at 22.) but this allegedly occurred *after* the appeal deadline, so he had already failed to exhaust. *See id.* at 644.   Therefore, the grievance process was not unavailable and Plaintiff was required to comply prior to filing suit.

Therefore, Defendants are entitled to judgment as a matter of law as Plaintiff failed to properly exhaust his administrative remedies and Plaintiff's claims should be dismissed.

**B.  Defendants are entitled to judgment as a matter of law as Plaintiff did not have a serious medical need on May 23, 2018 that required treatment by EMTs or at the emergency room**

In order for an inmate to establish an Eighth-Amendment violation based on inadequate medical care, the plaintiff must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Plaintiff must first be able to show that that the prisoner's medical need was "sufficiently serious." *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

In this matter, Defendants have named Dr. Harrod, a treating doctor at EDCF, as an expert

in this matter. Plaintiff also designated Dr. Harrod as an expert in this matter.

Dr. Harrod provided an affidavit based on his own personal knowledge of Plaintiff and based on his review of the medical records. *See* Exhibit F, Affidavit of Dr. Harrod. Dr. Harrod has provided a sworn statement that following the motor vehicle accident on May 23, 2018, he personally evaluated Plaintiff for injuries. *See* Exhibit F, ¶ 8. Dr. Harrod testified that based on his examination of Plaintiff, it was his opinion that Plaintiff had low back strain, which was capable of being treated at the EDCF Infirmary. *See* Exhibit F, ¶ 11. It is Dr. Harrod's opinion that Plaintiff did not have a serious medical need that required immediate medical treatment beyond that which could be provided at the EDCF Infirmary. *See* Exhibit F, ¶ 14. Further, Dr. Harrod has provided the opinion that Plaintiff was not denied any treatment required and there was no delay in providing Plaintiff any treatment after the accident. *See* Exhibit F, ¶¶ 18-19. In fact, as it relates to Plaintiff's ongoing complaints of back pain, Dr. Harrod relates these to degenerative changes that were not caused by the accident. *See* Exhibit F, ¶ 21. This was further supported by a neurosurgeon seen by Plaintiff. *See* Exhibit F, ¶ 22.

Simply put, the only expert identified by the parties in this case has opined that following the motor vehicle accident on May 23, 2018, Plaintiff did not have a serious medical need that required treatment by EMTs or at an emergency room as opposed to at the EDCF Infirmary. Therefore, Defendants are entitled to judgment as a matter of law on both Counts I and II as it relates to claims for deliberate indifferent to a serious medical need.

### C. In the alternative, Defendants are entitled to judgment as a matter of law as Defendants were not deliberately indifferent to a serious medical need

In the alternative, if the Court finds that Plaintiff did have a serious medical need, the evidence clearly demonstrates that there was no deliberate indifference on the part of any of the Defendants.

In order to establish a violation under 42 U.S.C. § 1983, plaintiff must establish "that each defendant acted under color of state law and that he or she violated a right secured by the Constitution." *Richey v. Ferguson*, 05-5162, 2007 WL 710129, at *18 (W.D. Ark. Mar. 6, 2007). Mere negligence will not suffice to establish a claim for deprivation of a constitutional right under § 1983. *Id.* A mere difference of opinion regarding medical care does not support a Section 1983 claim. *Sandifer v. Green*, 126 Fed.Appx. 908, 911 (10th Cir. 2005). Simply stated, a prisoner's disagreement or dissatisfaction with treatment offered is not sufficient to establish deliberate indifference. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

The "deliberate indifference" test has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious;" and (2) "a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

To satisfy the objective component, "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Here, Plaintiff was transported back to EDCF and received treatment at the facility by Dr. Harrod and the EDCF Infirmary. Therefore, there as not denial of the "minimal civilized measure of life's necessities."

"The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must **both** be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the

inference." *Id.* (citation and quotation omitted) (emphasis added). The Defendant must "consciously disregard[] a substantial risk of serious harm." *Thomas v. Bruce*, 428 F.Supp. 2d 1161, 1170 (D. Kan. 2006). In other words, Plaintiff must prove that a prison official **knows of** and **disregards** an excessive risk to inmate health or safety by failing to take reasonable measures to abate it. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment **does not** state a constitutional violation." *Sandifer*, 126 Fed.Appx. at 911 (citation omitted) (emphasis added). Simply put, "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment." *Smith v. Harvey County Jail*, 889 F.Supp. 426, 430 (D. Kan. 1995).

For a claim for deliberate indifference based on delay, a plaintiff must establish substantial physical harm resulting from the delay in treatment. *Bafford v. McNickle*, 08-3095-SAC, 2009 WL 2899802, at *2 (D. Kan. Sept. 4, 2009). A delay in providing medical care does not violate the eighth amendment unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993).

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years.

*Freeman v. Strack*, No. 99 CIV. 9878 (AJP), 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000).

In this case, Plaintiff has only alleged injuries as a result of the automobile accident.[2] Plaintiff has not provided evidence in support of any injuries caused by the alleged "delay" of medical care by Defendants.  In fact, as detailed above, the only expert identified in this matter, by both Plaintiff and Defendants, Dr. Harrod, has opined that there was in fact no delay in providing treatment to Plaintiff.  *See* Exhibit F, ¶ 19.

As it relates to the claims by Plaintiff that he should have been taken to the emergency room as opposed to back to EDCF, as noted above, a Section 1983 claim cannot survive when there is merely a disagreement on what type of medical care should be received --- in this case, care at the scene by EMTs versus medical staff at EDCF.  *See Smith v. Harvey County Jail*, 889 F.Supp. at 430.  Plaintiff's own allegations demonstrate that he was receiving care from EDCF medical staff, just not the care he wanted to receive, i.e., transport to the ER after the accident. Further, his injury was not so urgent to require treatment at an emergency room, as demonstrated by Dr. Harrod's affidavit.  *See* Exhibit F.

In addition, Plaintiff has no admissible evidence in support of the subjective component of deliberate indifference.  In fact, Plaintiff has previously reported that Defendant Corby "was really nice to me during the incident. I don't believe he should be punished in any kinda [sic] way."  Doc. 25-1, p. 9.  Further, all three named Defendants deny any knowledge of an excessive risk to Plaintiff by returning him to EDCF to be seen at the EDCF infirmary.  *See* Exhibits A, B, C.  All of the Defendants deny disregarding any risk to Plaintiff.  *See* Exhibits A, B, C.  Instead, all three Defendants have provided sworn testimony that based on the information known to them, they believed that Plaintiff would receive proper care at the EDCF infirmary; therefore, they followed the orders to return to the facility and to have Plaintiff taken to the infirmary.  *See* Exhibits A, B,

---

[2] The Court has previously dismissed the claims against Defendants as it relates to the accident itself.  *See* Memorandum and Order, Doc. 22, p. 8.

C. This testimony is further supported by Dr. Harrod who has provided the opinion that the injuries sustained by Plaintiff were not serious and could be treated at the EDCF infirmary. *See* Exhibit F.

Finally, all of the Defendants are entitled to qualified immunity as they were following orders to return Plaintiff to EDCF to be seen at the EDCF infirmary. Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

Here, as detailed above, all of the Defendants have provided sworn statements that Plaintiff did not appear to have a serious medical need that required treatment at an emergency room and they were ordered to return him to EDCF to be evaluated by clinic staff, which they did. This is further supported by Dr. Harrod that Plaintiff's injuries were such that did not require treatment at an emergency room. *See* Exhibit F.

Therefore, all the Defendants are entitled to qualified immunity and as Plaintiff cannot prove the objective or subjective component of deliberate indifference, Defendants are entitled to

judgment as a matter of law on both Counts I and II as it relates to claims for deliberate indifferent to a serious medical need.

### D. Defendant McCollough is entitled to judgment as a matter of law as Plaintiff cannot establish the objective or subjective component of an excessive use of force claim

The Eighth Amendment protects inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. The primary concern of the drafters was to outlaw torture and other barbarous methods of punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on his Eighth Amendment excessive force claim, Plaintiff must allege and prove both an objective and a subjective element. *Grissom v. Palm*, No. 21-3194, 2022 WL 3571410, at *4 (10th Cir. Aug. 19, 2022) (citing *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)).

For the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every allegedly malevolent touch by a prison guard gives rise to a federal cause of action. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). While the presence of an injury is not required, the presence or absence of an injury is a factor in determining whether a prison official's conduct constituted an objectively serious use of force. *See Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). Conclusory claims of severe pain are insufficient to establish an objectively serious use of force. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Lane v. Carty*, No. 09-3153-SAC, 2009 WL 3125469, at *3 (D. Kan. Sept. 28, 2009) (finding no Eighth Amendment violation because the plaintiff's allegations of injury and pain were

"completely conclusory").

Here, Plaintiff makes conclusory allegations of injury and pain due to McCollough's alleged conduct. (*See* Doc. 25 at 6, 12.) But this is insufficient to establish the objective component. McCollough also cites hearsay statements in support of his allegations of injury. (Doc. 25 at 12.) But the uncontested medical evidence fails to show that any injuries were attributable to any alleged conduct by McCollough. *See* Exhibit F, Dr. Harrod Affidavit, ¶¶ 21-22. Therefore, Plaintiff has not established the objective component of an excessive force claim against McCollough.

To establish the subjective component, Plaintiff must show that Defendant McCollough "acted with a sufficiently culpable state of mind." *Grissom v. Palm*, No. 21-3194, 2022 WL 3571410, at *4 (10th Cir. Aug. 19, 2022) (quoting *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018)). In *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983), the Tenth Circuit Court of Appeals provided three elements for excessive force claims: The inmate must show that (1) the guard intended to harm the prisoner; (2) the guard used more force than appeared reasonably necessary at the time to maintain or restore institutional order; and (3) the guard's actions caused severe pain or lasting injury to the prisoner. *See also Scott v. Clune*, No. 17-3024-JAR, 2018 WL 3222612, at *3 (D. Kan. July 2, 2018) (citing the *Sampley* elements approvingly). The first element, intent to harm, clearly falls under the subjective prong. The second element, reasonableness of force, has both an objective aspect and a subjective aspect, so it spans both prongs. The third element, severe pain or lasting injury, has already been analyzed under the objective prong above.

For the first element, intent to harm, the conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Rather, Plaintiff must show that the Defendant McCollough took his actions "maliciously and sadistically for the very purpose of causing harm" and not in a "good faith effort to maintain or restore discipline." *Id*. at 320-21; *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319.

For the second element, reasonableness of force, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kisela v. Hughes*, 584 U.S. 100, 103 (2018). The analysis must consider "the highly-charged prison environment and accord wide-ranging deference to prison officials." *McCoy v. Kan. Dep't of Corr.*, No. 16-3239-SAC, 2018 WL 1726344, at *4 (D. Kan. Apr. 10, 2018) (citing *Hudson*, 503 U.S. at 6, and *Sampley*, 704 F.2d at 495-96). Courts may consider: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) any threat reasonably perceived by the officers; and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Here, Plaintiff has failed to establish the subjective component of either an excessive force claim or a deliberate indifference claim as it relates to Defendant McCollough.  Although Defendant McCollough denies any use of force, even if force was used, Plaintiff cannot show that Defendant McCollough maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to maintain or restore discipline.  Defendant McCollough has indicated that he only assisted Plaintiff from one transport van to another, and then into a wheelchair upon his return to EDCF.  In addition, Dr. Harrod has provided testimony that Mr. Brownlee did not report

any physical altercations with security personnel. *See* Exhibit F.

Therefore, Plaintiff fails to establish both the subjective and objective prongs for both excessive force and deliberate indifference as to Defendant McCollough.

**E. As a matter of law, Plaintiff is not entitled to punitive damages**

Federal Rule of Civil Procedure 56 allows for "partial summary judgment," not necessarily on whole claims, but on a "part of each claim or defense." Here, even if Plaintiff's claims otherwise survive summary judgment, he is not entitled to punitive damages under § 1983 because he has not alleged or provided any evidence that any defendants acted with the required maliciousness, evil motive, or with reckless indifference to his civil rights, or that they subjectively knew their actions were unconstitutional under clearly established law. *See Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992); *Searles v. Van Bebber,* 251 F.3d 869, 879 (10th Cir. 2001) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Therefore, in the alternative, partial summary judgment for Defendants is appropriate on Plaintiff's punitive damages claims.

**VI.    CONCLUSION**

WHEREFORE, Defendants request an Order from this Court granting judgment as a matter of law in their favor on all claims in Plaintiff's Second Amended Complaint, and for such other relief as is just and necessary.

Respectfully Submitted,

*/s/ Tracy M. Hayes*
Tracy M. Hayes        KS #23119
SANDERS WARREN & RUSSELL LLP
Compass Corporate Centre
11225 College Blvd., Suite 450
Overland Park, KS  66210
Phone:  913.234.6100
Fax:      913.234.6199
t.hayes@swrllp.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22<u>nd</u> day of November, 2024, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.  I hereby further certify a copy of the foregoing was sent via U.S. Mail postage prepaid to the following:

Gustin C. Brownlee #73693
Lansing Correctional Facility
301 E Kansas Avenue
Lansing, KS 66043


/s/ Tracy M. Hayes
**Attorney**